UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DARRELL CARTER and MONA CARTER,   Civ. No. 10-210 (DWF/LIB)

      Plaintiffs,

v.  **REPORT AND RECOMMENDATION**

WELLS FARGO BANK N.A., and
WELLS FARGO MORTGAGE,

      Defendants.

---

## I.   INTRODUCTION

This matter is before the Court upon Defendants' Motion for Summary Judgment, which has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, it is recommended that Defendants' Motion for Summary Judgment be granted.

## II.   FACTUAL BACKGROUND

Plaintiffs Mona and Darrell Carter (collectively, "the Carters")[1] assert a claim for breach of contract against Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[2], alleging that Wells Fargo breached an agreement to provide the Carters with a mortgage loan in the amount of $140,000 at an interest rate of 6.25 percent.[3]

---

[1]  Plaintiffs are proceeding pro se in this matter, although Mr. Carter is a licensed attorney in the State of Minnesota.

[2]  Wells Fargo Mortgage has been merged into and operates as a division of Wells Fargo Bank.

[3]  Plaintiffs initially asserted several other claims arising out of the disputed loan transaction.  Following Wells Fargo's motion to dismiss, the Carters agreed to the dismissal of all of their claims except for the breach of contract claim.  (Dkt. 12, at pp. 3-4). In its Order dismissing the Carters' other claims, the District Court noted that it retained supplemental jurisdiction over the breach of contract claim.  (Id. at pp. 4-5).

1

In 2006, the Carters contacted Trey Bowman, who was a loan associate with Wells Fargo, seeking a mortgage loan for a property located in Bemidji, Minnesota. The Carters needed the proceeds in order to pay a third party, who needed the money by the end of 2006. (Def.'s Exh. A, at pp. 15-20; Def.'s Exh. C, at pp. 19-24). Because of the time constraints necessitated by this deadline, the Carters were unable to "shop around" with different lenders and only submitted a loan application with Wells Fargo. (Def.'s Exh. C, at pp. 32-33).

The property in question was originally a residential home, but it has been renovated to include several apartments, sleeping rooms, and office space. (Id. at pp. 14-17). The property houses Mr. Carter's law office, and the Carters have rented out the sleeping rooms and apartments in the building. The Carter family was living in the building when they applied for the loan at issue in this litigation.

During his deposition, Mr. Carter testified that he was concerned that the building would not qualify as a residential building and that it would be deemed a commercial building. According to Mr. Carter, Bowman "insisted that [the Carters] would have no problem" with qualifying the property as a residential building since the Carters were living in the building at that time. (Def.'s Exh. A, at p. 18). The Carters "repeatedly" asked Bowman if the building was going to qualify for a residential loan, and Bowman assured the Carters that "he would get it through." (Id. at p. 18). Mr. Carter testified that Bowman "said no problem, I'll get you a six and a quarter percent interest [rate]." (Id.) During her deposition, Ms. Carter stated, "I understood that the appraisal needed to come back residential, and if it didn't, then we needed to go somewhere else." (Def.'s Exh. C at p. 34).

Mr. Carter testified that in mid-December, the Carters received a commitment letter advising that Wells Fargo would be able to provide the requested loan at a 6.25 percent interest rate. (Def.'s Exh. A, at p. 19). The Carters claim that approximately one week prior to their scheduled loan closing, they received a second letter from Wells Fargo stating that it was withdrawing the 6.25 percent interest rate and that Wells Fargo would now be offering an interest rate of over nine percent. (Id. at p. 24). The Carters concede that they are not in possession of the two letters that reference the 6.25% interest rate.[4] (Def.'s Exh. B).

Wells Fargo has submitted a December 21 commitment letter, which reflects an interest rate of 9.375 percent. (Def.'s Exh. D). The letter does not mention the 6.25 percent interest rate, and it does not indicate that the commitment letter withdrew or revoked any previous agreement or commitment regarding the interest rate for the loan.

The December 21 commitment letter states that the interest rate "[r]eflects interest rate used for qualifying purposes. (not guaranteed)." The commitment letter further states "[b]y electing to 'play the market', you understand that the Interest Rate . . . [is] not guaranteed."

Because of their time constraints, the Carters locked-in their interest rate at 9.125 percent on December 21, 2006, notwithstanding their objection to the higher interest rate. (Def.'s Exh. E; Def.'s Exh. A, at p. 20; Def.'s Exh. F). Closing took place on December 28, 2006. (Def.'s Exh. A, at p. 36). Over the next five months, the Carters made loan payments without objection. (Def.'s Exh. A, at pp. 36-37). Then, on May 18, 2007, Mr. Carter sent a letter to Wells Fargo stating:

---

[4] Mr. Carter stated, "I remember when I got the letter, I was steaming mad and I threw it in the garbage." (Def.'s Exh. A, at p. 24).

> "Last fall my wife and I, who have been long time Wells Fargo customers, applied for a loan for the purchase of a residence. For weeks we were promised that we would qualify for a 6.25% interest rate on the home. We were at a 66% loan to value and were assured that our loan would go through. We were even given a commitment letter at the 6.25% interest. That commitment was later withdrawn and we were given a rate of 9.12% at the last minute just before closing. Our backs were up against the wall at that point and we had to close as we had no other option other than to go forward. There was no time to secure another lender in time to close before the end of the year."

(Def.'s Exh. G). On June 27, 2007, Mr. Carter sent another letter to Wells Fargo stating:

> "What I want is that the note be rewritten to the interest rate of 6.25% that was promised to us for months. We detrimentally relied on the representations of the Wells Fargo agent and did not seek a loan from any other source as we have done business with Wells Fargo for years. We relied on the representation that we would get the loan as promised. We even got a commitment letter for 6.25% and then a week before we were to close the loan the interest rate jumps to 9.375% and a pre-payment penalty was included without our knowledge until we got to closing. If I have to sue for breach of contract then that is what we have to do, but I won't accept what Wells Fargo did to us."

(Def.'s Exh. H). This lawsuit was commenced on or about December 28, 2009. Plaintiffs did not file a written response to the motion and they made no appearance at the hearing.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only when the evidence demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be

given the benefit of all reasonable inferences to be drawn from the evidence. <u>Mirax Chemical Products Corp. v. First Interstate Commercial Corp.</u>, 950 F.2d 566, 569 (8th Cir. 1991).

The moving party has the initial burden of bringing forth sufficient evidence to establish that there are no genuine issues of material fact to be decided by a jury and that the movant is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u> A genuine issue of fact does not exist in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323. When a motion for summary judgment has been properly made and supported, the burden then shifts to the nonmoving party, who may not rest on mere allegations or denials in the pleadings, but must set forth specific, evidence-based facts showing the existence of a genuine issue for trial. <u>Forrest v. Kraft Foods, Inc.</u>, 285 F.3d 688, 691 (8th Cir. 2002).

**IV.   DISCUSSION**

Wells Fargo argues that even if the Court assumes that Wells Fargo made a promise to lend money to the Carters at a particular interest rate, the Carter's breach of contract claim fails as a matter of law because Minnesota Statute bars a debtor from enforcing a credit agreement that is not memorialized in writing.

Subdivision 2 of Minnesota Statutes Section 513.33 states:

> "**Credit agreements to be in writing.** A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor."

5

A "credit agreement" is defined as any "agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn.Stat. § 513.33, Subd. 1(1). A "debtor" is defined as "a person who obtains credit or seeks a credit agreement with a creditor or who owes money to a creditor," and a "creditor" is one "who extends credit under a credit agreement with a debtor." Minn.Stat. § 513.33, subd. 1(2) and (3).

"[C]laims on agreements falling under section 513.33 fail as a matter of law if the agreement is not in writing." Greuling v. Wells Fargo Home Mortgage, Inc., 690 N.W.2d 757, 761-62 (Minn. App. 2005), citing Becker v. First American State Bank of Redwood Falls, 420 N.W.2d 239, 241 (Minn.App. 1988); Chies v. Highland Bank, 2001 WL 214693 at *2 (Minn.App. Mar. 6, 2001)("The statute of frauds bars a debtor from bringing an action against a creditor on a credit agreement unless the essential elements of the contract are expressed in writing"). "The Minnesota credit agreement statute was enacted in 1985 to protect lenders from having to litigate claims of oral promises to renew agricultural loans." Rural American Bank of Greenwald v. Herickoff, 485 N.W.2d 702, 705 (Minn. 1992)(rejecting the court of appeal's narrow construction of "any financial accommodation" and finding that bank's promise to apply farming proceeds to a particular loan first constituted a "financial accommodation" within the meaning of the statute). Section 513.33 should be construed to support "broad application." BankCherokee v. Insignia Development, LLC, 779 N.W.2d 896, 902 (Minn.App. 2010).

It is undisputed that there are no documents in the record evidencing Wells Fargo's promise to provide a mortgage loan at a 6.25 percent interest rate. Accordingly, the Court must determine whether an agreement to provide a loan at a specific interest rate is a "credit agreement" within the meaning of a statute. This issue is easily resolved, as Minnesota law

6

clearly establishes that Wells Fargo's agreement to lend money according to certain terms falls within the scope of Section 513.33 See, e.g., Carlson v. Estes, 458 N.W.2d 123, 128 (Minn.App. 1990)(bank's oral agreement to lower interest rate was a "credit agreement" within the meaning of the statute and therefore plaintiffs' claim was barred by the statute of frauds); Greuling, 690 N.W.2d at 761-62 (section 513.33 precluded claim on mortgage company's oral promise to refinance the transaction after closing).

"The plain and ambiguous language of the statue clearly prohibits a claim that a new credit agreement is created unless the agreement is in writing, expresses consideration, sets forth all relevant terms and conditions, and is signed by the creditor and debtor." Greuling, 690 N.W.2d at 762. The Carters claim that Wells Fargo promised to enter into a credit agreement to lend them money at a particular interest rate, but they have failed to produce a writing evidencing the agreement. The case law clearly establishes that the Carters cannot maintain a claim against Wells Fargo in the absence of a writing evidencing the essential elements of the agreement. Therefore, their breach of contract claim fails as a matter of law pursuant to Section 513.33.[5]

## V.   CONCLUSION

In sum, the Carter's breach of contract claim is barred by the statute of frauds because they have failed to produce written evidence of Wells Fargo's promise to provide them with a loan at an interest rate of 6.25 percent. Accordingly, Wells Fargo is entitled to judgment as a matter of law and its motion for summary judgment should therefore be granted.

---

[5]  In any event, the Court believes that the Carters have abandoned their claim, as they have not opposed the motion and they did not make an appearance at the hearing.

7

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment [Docket No. 22] be GRANTED.

2. If this Report and Recommendation is adopted, that Judgment be entered accordingly.

Dated: June 10, 2011                              s/Leo I. Brisbois
                                                  LEO I. BRISBOIS
                                                  United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by June 24, 2011,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.